**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 23-253 |
| | ) | |
| MICHAEL RODICH | ) | |

**MEMORANDUM OPINION**

Presently before the Court is Defendant Michael Rodich's Motion to Suppress, which is opposed by the Government. (Docket Nos. 39, 49, 61). After careful consideration of the parties' respective positions, the Court finds that Defendant's arguments for suppression lack merit, thus his Motion will be denied.

## I. BACKGROUND

Defendant was apprehended on September 29, 2023 by the New Brighton Area Police. His apprehension was made pursuant to an arrest warrant issued by Magisterial District Judge Mary A. Odem on May 12, 2023 in connection with robbery and firearm charges stemming from an incident at Dubz Smoke and Vapor ("Dubz") in Hermitage, Pennsylvania on May 9, 2023. The arrest warrant was issued pursuant to an affidavit in support of a criminal complaint signed by Detective Todd Saylor of the Hermitage Police Department on May 12, 2023 (the "Affidavit"), which is attached as Exhibit A to Defendant's Motion. (*See* Docket No. 39-2).

Defendant subsequently was charged in a five-count Indictment in this case with the following: Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One); using, carrying and brandishing a firearm during and in relation to a crime of violence and possession of a firearm in furtherance thereof, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(A)(ii) (Count Two);

possession with intent to distribute a quantity of fentanyl, a quantity of crack cocaine and a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Three); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Four); and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five). (Docket No. 1). The conduct underlying counts One and Two is alleged to have occurred on May 9, 2023, and the conduct underlying Counts Three, Four, and Five is alleged to have occurred on September 29, 2023. (*See id.*).

Defendant now moves to suppress evidence seized from him when he was arrested on September 29, 2023, which he submits the Government will seek to admit at trial in order to prove its case on Counts Three, Four, and Five of the Indictment. (Docket No. 39, ¶ 1). According to Defendant, the Affidavit contained numerous material misrepresentations and omissions, which misled the issuing judge concerning the existence of probable cause to issue the arrest warrant. (*Id.*, ¶ 2; 18). Correcting those errors would result in an affidavit that failed to establish probable cause to arrest him, thus making his apprehension and search incident thereto illegal. (*Id.*, ¶¶ 2; 19). Consequently, Defendant advocates that the evidence seized during that search should be suppressed. (*Id.* ¶¶ 2; 20). Defendant additionally argues that law enforcement independently conducted a warrantless search of a backpack seized from him during his apprehension. (*Id.*, ¶¶ 3; 23). He maintains that the warrantless search was not justified as incident to a lawful arrest, therefore the evidence recovered from the backpack should be suppressed. (*Id.*).

The Government responds that the Court should deny Defendant's Motion to Suppress for multiple reasons. First, the police did not omit material information from the Affidavit, and there is no evidence that minor omissions were done with reckless disregard for the truth. (Docket No. 49 at 12-16). Second, even correcting for the claimed misstatements and omissions, the Affidavit

provides probable cause for an arrest warrant. (*Id.* at 17-18). Third, the arrest warrant was not facially deficient, so police in another jurisdiction could reasonably rely on it in good faith to apprehend Defendant. (*Id.* at 18-19). Fourth, a report that Defendant might be armed and dangerous and his intervening criminal acts provided an independent basis to arrest and search him, thus the original arrest warrant was far too attenuated from the search to apply the exclusionary rule and suppress evidence. (*Id.* at 19-21). Finally, the evidence in Defendant's backpack was lawfully seized pursuant to police inventory policy. (*Id.* at 21-23).

Defendant subsequently filed a Reply contesting the Government's arguments and further amplifying his position in favor of suppression. (*See generally* Docket No. 61). Defendant's Motion is now ripe for disposition.

## II. <u>DEFENDANT'S MOTION TO SUPPRESS</u>

To summarize, Defendant argues that suppression is warranted because the Affidavit misstated and omitted facts material to the finding of probable cause for issuance of the arrest warrant. Defendant additionally contends that the police impermissibly searched a backpack seized from him when he was arrested, thus the evidence recovered from that search should be suppressed. Defendant is incorrect on both counts.

### A. <u>Background Regarding Events of May 9, 2023</u>

According to the Affidavit, Detective Saylor was employed with the Hermitage Police Department and had over 23 years of experience, including successfully investigating numerous robbery cases. (Docket No. 39-2 at 9). Detective Saylor averred that probable cause existed for issuance of an arrest warrant for Defendant based on an incident that occurred on May 9, 2023. (*Id.*). On that date, the Hermitage Police responded to Dubz for a report of an armed robbery. (*Id.*). The actor produced a handgun during the robbery and subsequently fled from the store on

foot. (*Id.*). The actor was described as a white male wearing a drywall style dust mask, an NYPD hat, a chain wallet on his right side, white or gray tennis shoes, blue jeans, and a gray hoodie. (*Id.*).

According to a Dubz employee, the actor entered the store and discussed particular cartridges. (Docket No. 39-2 at 9). The employee walked with the actor to the back room of the store, showed him the display where the cartridges were located, and pulled out a particular cartridge box at the actor's request. (*Id.*). When the employee walked around the counter to the register, the actor reached his right hand into his waistband and displayed a semiautomatic handgun on the counter pointed toward the employee. (*Id.*). The actor told the employee to "give [him] all the money and be quiet." (*Id.*). The employee handed the actor $506 in cash from the register, which he placed in his hoodie pocket, and he also took the cartridge before departing the store. (*Id.*).

Responding officers obtained store surveillance video of the incident, which showed the actor to be a white male with a slim build and average height. (Docket No. 39-2 at 9-10). He was wearing a blue NYPD baseball cap, a gray hooded sweatshirt, blue jeans, and sneakers, and he had visible tattoos across his neck and left hand. (*Id.* at 10).

Also on May 9, 2023, a Hermitage police officer spoke with an Ellwood City police officer, who advised that a female was in custody related to an armed robbery that occurred in their jurisdiction that day. (Docket No. 39-2 at 10). In connection with that robbery, the Ellwood City police had impounded a blue Ford Fusion, which was searched pursuant to a warrant. (*Id.*). That search uncovered the following: a blue NYPD baseball cap, a gray hooded sweatshirt that matched the actor in the Dubz incident, a pistol holder, a prescription for RISE dispensary for Michael Rodich, and a receipt for Family Dollar Store in McKees Rocks on May 9, 2023. (*Id.*).

A database and social media search for Michael Rodich revealed that he has neck and left

arm/hand tattoos. (Docket No. 39-2 at 10). The neck tattoo extends across his neck to below his ears. (*Id.)*. Rodich's tattoos, height, and weight were consistent with the actor in the Dubz incident. (*Id.*).

On May 11, 2023, the Hermitage police received surveillance footage from Family Dollar in McKees Rocks for the date and time of the purchase listed on the receipt found in the Ford Fusion. (Docket No. 39-2 at 10). The surveillance footage showed Rodich arrive in a blue sedan consistent with a Ford Fusion. (*Id.*). It also showed a person who appeared to be Rodich making a purchase at the time on the receipt found in the Ford Fusion. (*Id.*).

Additionally, on May 11, 2023, Detective Saylor spoke with the employee/witness from Dubz, who described the actor as having letter tattoos on his hands and fingers, a skull tattoo on his neck, and a cloud that wraps to the side with a spike letter tattoo after the cloud on the side of his neck. (Docket No. 39-2 at 10). The description of the tattoos matched the location and content of tattoos observed on Rodich on his social media and database photos of him. (*Id.*). Finally, a records search revealed that Rodich resided approximately one thousand feet from Dubz from 2003 to 2008. (*Id.*).

### B. Legal Standard – *Franks* Hearing

In *Franks v. Delaware*, 438 U. U.S. 154, 155-56 (1978), the Supreme Court articulated the rule governing situations involving allegedly misleading search warrant affidavits, holding that a defendant has the right to an evidentiary hearing to challenge the truthfulness of statements made in an affidavit establishing probable cause if certain requirements are met.[1] To obtain a hearing, *Franks* requires a defendant to make a substantial preliminary showing that the affidavit contained

1 While *Franks* dealt with search warrants, later cases have applied its reasoning to arrest warrants. *See, e.g.*, *United States v. Carter*, 756 F.2d 310, 313 (3d Cir. 1985); *United States v. Harrison*, 400 F. Supp. 2d 780, 785 (E.D. Pa. 2005).

a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. *Id.* at 155–56, 171. In order to make this showing, the defendant cannot rest on conclusory allegations or a "mere desire to cross-examine." *Id.* at 171. Rather, he must specifically identify the alleged false statements or omissions in the affidavit[2] and present an offer of proof contradicting the affidavit, including materials such as affidavits or sworn or otherwise reliable statements of witnesses, or provide a satisfactory explanation of their absence. *Id.*; *see also United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (citing *United States v. Yusuf*, 461 F.3d 374, 383 n. 8 (3d Cir. 2006)).

"[The] preliminary showing [that a defendant must make] is no light burden and puts the defendant to task by requiring some offer of proof that materially false statements were recklessly or intentionally made." *United States v. Romeu*, 433 F. Supp. 3d 631, 645 (M.D. Pa. 2020) (quoting *United States v. Darby*, No. 1:14-CR-00123, 2015 WL 13344905, at *3 (M.D. Pa. Aug. 19, 2015)). To reiterate, "[t]o make the initial showing, a defendant must allege with specificity what was false in the affidavit, must provide proof, must allege that the affiant had a culpable state of mind, and must allege that the remaining information from the affidavit is insufficient to support a finding of probable cause." *United States v. Yokshan*, 431 F. App'x 170, 173 (3d Cir. 2011) (citing *Franks*, 438 U.S. at 171-72).

If the requirements of the substantial preliminary showing "are met, and if, when material

---

2 Statements or assertions contained in an affidavit of probable cause are "made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.' " *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Clapp*, 46 F.3d 795, 801 n. 6 (8th Cir. 1995)). Omissions from an affidavit are made with reckless disregard for the truth if an affiant withholds facts that any reasonable person would know that a judge would want to know. *Id.* at 788. A district court "may properly infer that an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it." *United States v. Brown*, 631 F.3d 638, 649 (3d Cir. 2011). However, when attempting to demonstrate that the affiant included a false statement in a warrant affidavit or omitted material from it, it is insufficient to prove that he acted with negligence or made an innocent mistake. *Franks*, 438 U.S. at 171; *Yusuf*, 461 F.3d at 383.

that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72. However, if the remaining content is insufficient, the defendant is entitled to a hearing.[3] *Id.* at 172.

### C. <u>Defendant Has Not Established that He is Entitled to a Franks Hearing</u>

In light of the prevailing legal standard, Defendant is not entitled to a *Franks* hearing because he has not made the requisite substantial preliminary showing. *See Franks*, 438 U.S. at 171. Defendant failed to make the threshold showing for two reasons: (1) he failed to make an offer of proof showing that Detective Saylor misstated or omitted information from the Affidavit knowingly and intentionally or with reckless disregard for the truth; and (2) even if the information that Defendant claims is a misstatement or omission is excised or inserted, the Affidavit still would contain sufficient content to support a finding of probable cause.

Initially, Defendant has identified certain alleged false statements in the Affidavit and has specified other items that he contends were omitted.[4] Crucially, however, he has not made an offer of proof consisting of affidavits or sworn or otherwise reliable statements of witnesses to contradict the Affidavit, nor has he explained the absence of these materials. *See Franks*, 438 U.S. at 171; *Desu*, 23 F.4th at 234; *Yusuf*, 461 F.3d at 383, n. 8; *United States v. Rodriguez-Colon*, 827 F. App'x

---

3 If a *Franks* hearing is held, and the defendant proves by a preponderance of the evidence that the false statements or omissions were made knowingly and intentionally or with a reckless disregard for the truth, and with the affidavit's false material set aside, the remaining content is insufficient to establish probable cause, then the warrant must be voided, and the fruits of the search must be excluded from the trial. *Franks*, 438 U.S. at 156; *see also United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993).

4 Defendant also suggests that there are other unspecified misstatements and omissions in addition to those he enumerates in his Motion. (*See* Docket No. 39, ¶ 18) (stating that the misstatements and omissions in the Affidavit "***include, but are not limited to***," those listed in ¶ 18) (emphasis added)). Defendant's suggestion that there are other unspecified misstatements and omissions is contrary to *Franks*' requirement that he must specifically identify the false statements or omissions. *See Franks*, 438 U.S. at 171; *see also Yokshan*, 431 F. App'x at 173 ("To make the initial showing, a defendant must allege with specificity what was false in the affidavit . . . .").

188, 190 (3d Cir. 2020) (affirming denial of motion to suppress evidence claiming that affidavit in support of search warrant contained material omissions where the defendant's challenge did not contain an offer of proof). Despite the absence of an offer of proof, the Court addresses the alleged misstatements and omissions in turn.

Defendant first claims that the Affidavit misstated the Dubz employee's report describing the actor's tattoos as matching the location and content of his tattoos. (Docket No. 39, ¶ 18.i.). Defendant does not contest that his tattoos are in similar locations, but he maintains that they are "markedly different" than those described by the Dubz employee, which he says Detective Saylor would have known after having reviewed his photograph on social media and law enforcement databases. (*Id.*). Defendant does not explain what is "markedly different" about his tattoos, let alone provide any materials illustrating the differences via an offer of proof.

Second, Defendant alleges that Detective Saylor failed to include the Dubz employee's "other specific descriptions of the actor" (concerning his eye color, height, and age) which were inconsistent with Defendant. (Docket No. 39, ¶ 18.ii.). To the extent that the Dubz employee conveyed "other specific descriptions of the actor" in addition to what is detailed in the Affidavit, Defendant has not provided an offer of proof containing that information.[5] Nonetheless, the minimal discrepancy in the employee's description of the actor as 5'10" to 6', when Defendant says he is actually 5'8" is immaterial, as is the estimate that Defendant appeared to be in his early to mid-twenties when he was in his late thirties, considering the actor's face was partially covered with a mask.[6] *See, e.g.*, *United States v. McKnight*, 568 F. App'x 178, 182 (3d Cir. 2014)

---

5 The Court surmises that the other descriptions referenced by Defendant were contained in reports prepared by Corporal Young and Sergeant Martin, who responded to the scene of the Dubz robbery. (*See* Docket No. 39, ¶¶ 5, 6). However, even if that is accurate, Defendant has not provided an offer of proof containing those reports.

6 As set forth in the Affidavit, the actor was described as wearing a drywall style dust mask. (Docket No. 39-2 at 9).

(affirming denial of request for *Franks* hearing where, *inter alia*, witnesses described the robbers as being in their twenties or thirties, while the defendant was in his fifties, given that the witnesses noted other characteristics that were consistent with his appearance).

Third, Defendant complains that the Affidavit does not disclose that fingerprints were lifted from the scene at Dubz, and Detective Saylor did not subsequently notify the judge when it was determined months after the arrest warrant was issued and before it was executed that the fingerprints did not match Defendant. (Docket No. 39, ¶ 18.iii.). Contrary to Defendant's position, law enforcement officers are not required to include every detail in an affidavit of probable cause. *See United States v. Ventresca,* 380 U.S. 102, 108 (1965) (Warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity . . . have no proper place in this area."); *Wilson*, 212 F.3d at 787 ("We cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip."). Furthermore, Detective Saylor was not bound to notify the judge about the non-matching fingerprints in light of the Court of Appeals' decision in *Dempsey v. Bucknell Univ.*, 834 F.3d 457 (3d Cir. 2016), holding that evidence acquired after an affidavit of probable cause was sworn cannot be considered:

> We emphasize that in making the determination about the existence of probable cause, we examine only the information available to the officer at the time of the swearing of the affidavit of probable cause. After-acquired evidence, however significant for trial, does not inform an officer's knowledge or good faith.

*Id.* at 480; *see also, Maybin v. Slobodian*, No. 16-1394, 2017 WL 4310251, at *6 (E.D. Pa. Sept. 28, 2017) ("Once an affidavit is sworn, however, officers do not have a duty to present new exculpatory facts. In *Dempsey*, the Third Circuit laid down a bright-line rule that statements received after an affidavit for probable cause is sworn cannot be considered when reconstructing

an affidavit.") (citing *Dempsey*, 834 F.3d at 480). Furthermore, even if the fingerprint information had been included, it would not defeat probable cause. Non-matching fingerprints do not definitively exclude Defendant as the actor in the Dubz robbery considering the other identifying information (physical, tattoos, clothing) contained in the Affidavit.

Fourth, Defendant's claim that the Affidavit does not mention the clothes he wore at the Family Dollar in McKees Rocks apparently were different than those worn by the actor in the Dubz robbery, (Docket No. 39, ¶ 18.iv.), is immaterial because it stands to reason that an individual can change clothes during the course of a day.

Fifth, Defendant's assertion that the Affidavit fails to disclose that Dubz was receiving information about other potential robbery suspects, (Docket No. 39, ¶ 18.v.), is unsubstantiated on the present record. Defendant admits as much by stating, "***[u]pon information and belief***, potential suspects other than [him] were reported to Dubz through Facebook, none of which were meaningfully investigated by law enforcement." (*Id.*, ¶ 7) (emphasis added).

Finally, contrary to Defendant's position, the Affidavit's failure to include the distances between his locations in Western Pennsylvania on May 9, 2023, (Docket No. 39, ¶ 18.vi.), was not misleading to the judge. The various locations (Hermitage, Ellwood City, McKees Rocks) were identified in the Affidavit, hence the judge could discern the distance between them assuming she had general knowledge of Western Pennsylvania's geography. To the extent that the judge was unfamiliar with the locations, the distance between them easily could have been obtained by a simple internet search.

In summary, Defendant fails the first prong of *Franks* because he has not presented an offer of proof contradicting the Affidavit and showing that Detective Saylor knowingly and intentionally made false statements or omitted information from the Affidavit or that he acted with reckless

disregard for the truth. *See United States v. Rivera*, 524 F. App'x 821, 826 (3d Cir. 2013) ("Even if the information provided by the informants was unreliable, [defendant] has offered no evidence that the detective who provided the affidavit either knew that the information was not true or recklessly disregarded its falsity."). At most, Defendant has made speculative and conclusory allegations with respect to the challenged misstatements and omissions which are insufficient to meet his burden for a hearing under *Franks*. *See Desu*, 23 F.4th at 234 (explaining that a defendant cannot "rest on mere conclusory allegations . . . but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses") (quoting *Yusuf*, 461 F.3d at 383, n.8).

Furthermore, even if the alleged misstatements and omissions identified by Defendant are excised or inserted, the Affidavit still would contain sufficient content to support a finding of probable cause. *See McKnight*, 568 F. App'x at 182 ("In a *Franks* proceeding, the court assesses materiality by removing allegedly false statements, inserting omissions, and determining whether probable cause nonetheless remains.") (citing *Yusuf*, 461 F.3d at 383-84). To that end, Defendant previously resided approximately one thousand feet from Dubz, thus he was familiar with the area. Defendant had tattoos on his neck and hands consistent with those of the actor in the Dubz robbery, and his physical description was consistent with the Dubz actor's build and height. A blue NYPD hat and a gray hooded sweatshirt matching those worn by the actor in the Dubz robbery on May 9, 2023 were seized from a blue Ford Fusion the same day as that robbery, along with Defendant's prescription for RISE dispensary and a receipt for Family Dollar in McKees Rocks on May 9, 2023. Surveillance footage from Family Dollar showed a person who appeared to be Rodich making a purchase on May 9, 2023 at the time listed on the receipt found in the vehicle. Accordingly, given that the Affidavit established probable cause even if Defendant's alleged

misstatements and omission are excised or inserted, he is not entitled to a *Franks* hearing regarding the validity of the arrest warrant.

### D. Law Enforcement Officers Had a Good Faith Basis to Rely on the Alert Regarding the Arrest Warrant to Apprehend Defendant

On September 29, 2023, police in Beaver County were advised of an alert for Defendant, who was wanted in connection with the arrest warrant sought by the Hermitage police and issued by Judge Odem. (*See* Docket Nos. 49-1 at 2; 49-2 at 4). New Brighton police ultimately located Defendant outside of a Foodland store in New Brighton and arrested him pursuant to the warrant. (*See* Docket No. 49-2 at 4).

Even if the Court were to conclude that the arrest warrant was not supported by probable cause, it was reasonable for the New Brighton police to rely on the alert regarding the warrant to apprehend Defendant pursuant to the good faith exception to the exclusionary rule. *See United States v. Dippre*, 695 F. Supp. 3d 604, 611-12 (M.D. Pa. 2023) (finding good faith exception applicable where officers relied on National Criminal Information Center ("NCIC") to discover a valid warrant and had no reason to believe the warrant was obtained improperly) (citing *Capone v. Marinelli*, 868 F.2d 102, 105 (3d Cir. 1989) (finding it was reasonable for officer to rely on NCIC bulletin that contained a warrant for defendant's arrest)). The law applicable to the good faith exception is summarized as follows:

> The Supreme Court has held that evidence derived from a warrant not supported by probable cause is still admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge. *United States v. Leon*, 468 U.S. 897, 926 (1984). "[T]he purpose of the exclusionary rule - to deter police misconduct - would not be furthered by suppressing evidence obtained during a search 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.' " *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 919–20).
>
> The question is "whether a reasonably well trained officer would have

> known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922. Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *United States v. Hodge*, 246 F.3d 301, 307-308 (3d Cir. 2001) (citing *Leon*, 468 U.S. at 922). The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:
>
> > 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> >
> > 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> >
> > 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> >
> > 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.
>
> *Tracey*, 597 F.3d at 151 (citations omitted). These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent.' " *Id.* (quoting *Herring v. United States*, 555 U.S. 135 (2009)).

*United States v. Gardenhire*, Crim. No. 15-87, 2017 WL 1105733, at *15 (W.D. Pa. Mar. 24, 2017).

Here, none of the four limited circumstances are present. As already discussed, the arrest warrant was not issued in reliance on a deliberately or recklessly false affidavit. Further, there is nothing in the record to suggest that Judge Odem abandoned her judicial role and failed to act in a neutral and detached manner. Likewise, any claim that the warrant was so facially deficient that it was not particularized is unsupported by the record. Finally, the warrant Affidavit is not so lacking in indicia of probable cause that it was entirely unreasonable for the police to rely on it in arresting Defendant. As explained, under the totality of the circumstances, the information contained in the Affidavit established probable cause for issuance of the arrest warrant.

In sum, even if the warrant was deemed insufficient, the good faith exception would apply

to the New Brighton police's reliance on the alert that there was an arrest warrant for Defendant. *See Dippre*, 695 F. Supp. 3d at 611-12. Consequently, suppression is not warranted.

**E. <u>There is No Basis to Suppress the Evidence Seized on September 29, 2023</u>**

Finally, Defendant argues that law enforcement impermissibly conducted a warrantless search of a backpack containing a locked box which was seized from him when he was arrested on September 29, 2023. (Docket No. 39, ¶ 23). As a result, Defendant advocates that any evidence recovered during that search must be suppressed. (*Id.*).

As noted, police encountered Defendant outside of a Foodland store in New Brighton, Pennsylvania on September 29, 2023. (*See* Docket No. 49-2 at 4). The police asked to speak with Defendant, but he attempted to flee and struggled with the police before he was ultimately restrained. (*Id.*). When Defendant was apprehended pursuant to the arrest warrant, he was found to have a gun in his waistband and a black metal case containing $2,380 in United States currency also was seized. (*Id.*). A search of his person additionally revealed a crack pipe, a piece of crack cocaine, and a small glass container with 38 pills stamped as Oxycodone. (*Id.*). After making a lawful arrest, the police may conduct a warrantless search incident thereto in order to secure weapons and to prevent the concealment or destruction of evidence. *United States v. Robinson*, 414 U.S. 218, 234-35 (1973). "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.* at 235. Therefore, the search of Defendant incident to his arrest pursuant to the warrant and the seizure of the firearm, currency, controlled substances, and paraphernalia were lawful.

Likewise, the search of Defendant's backpack was lawful.[7] Where, as here, "a valid arrest

7 As a result of that search, law enforcement recovered two baggies of crack cocaine, one bag of cocaine, one

has been made in a public place, which requires that the arrested person be transported from the scene, police may search any luggage that the person has in his possession at the time of the arrest, and which must accompany him to the police station, prior to transporting it." *United States v. Matthews*, 532 F. App'x 211, 224 (3d Cir. 2013); *see also United States v. Curran*, No. 1:13–CR–259, 2014 WL 2042138, at *4 (M.D. Pa. May 19, 2014) (denying motion to suppress and finding warrantless search of defendant's bags permissible under search before transportation exception), *aff'd*, 638 F. App'x 149 (3d Cir. 2016). As the Third Circuit Court of Appeals explained, "searches of this type are justified by concerns for officer safety and will be valid whether or not an officer has probable cause to believe the evidence contains contraband." *Matthews*. 532 F. App'x at 224 (citing *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983) ("It is immaterial whether the police actually fear any particular package or container; the need to protect against [safety] risks arises independent of a particular officer's subjective concerns.").

As noted, Defendant was arrested outside of a Foodland store. Given Defendant's arrest in a public space, the police obviously could not leave his backpack and any other personal belongings at the scene, but rather had to transport those items to the police station. Consequently, the search of Defendant's backpack was permissible in accordance with *Matthews*.[8]

---

glass container of cocaine, 26 stamp bags of a substance that field tested positive for the presence of fentanyl/heroin, a digital scale, four hypodermic needles, a metal spoon, a loaded Springfield magazine, and additional ammunition. (Docket No. 49-2 at 4).

8 The Government also contends that the search of Defendant's backpack was permissible pursuant to an inventory search. (Docket No. 49 at 21-22). According to the Government, the inventory search of Defendant's belongings was consistent with New Brighton police policy, so it was lawful. (*Id.* at 22). The Government attached as Exhibit 3 to its Response what it references as "New Brighton Holding Cell Policy." (*Id.* at 22; Docket No. 49-3). The Court notes that the document attached as Exhibit 3 to the Government's Response is entitled "Chapter Eight: Holding Cell Operations and Procedures." (*See* Docket No. 49-3). Although the Court assumes that the document comes from the New Brighton Police Department, none of the four pages comprising the document specifically reference the New Brighton Police Department. Therefore, the Court is unable to rely on that document to conclude that the search of Defendant's backpack was pursuant to New Brighton Police Department inventory policy.

## III. CONCLUSION

The arrest and search of Defendant and his backpack, and all evidence seized on September 29, 2023, were lawful. Accordingly, Defendant's Motion to Suppress, (Docket No. 39), is DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: May 27, 2025

cc/ecf: All counsel of record